UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOOP SPINE & SPORTS CENTER, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN COLLEGE OF MEDICAL QUALITY, INC., <br><br> Defendant. | No. 22 CV 04198 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Loop Spine & Sports Center received an unsolicited fax from defendant American College of Medical Quality. Loop Spine sued, alleging violations of the Telephone Consumer Protection Act (TCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). Loop Spine also sued for conversion and trespass to chattels. Defendant moves to dismiss plaintiff's state-law claims, though not its TCPA claim. Plaintiff moves to strike some of defendant's affirmative defenses. The motion to dismiss is granted in part, denied in part. The motion to strike is denied.

I.  **Legal Standard**

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and determines whether "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 453 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[L]egal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (citation and quotations omitted).

## II.     Facts

Defendant sent plaintiff a one-page fax advertising a "Care After COVID" conference and informing plaintiff that early-bird pricing for the conference ended August 15th. [1] ¶¶ 9, 11; [1-1] at 2.[1] The fax included the conference's website ("Check out our website for all conference information including registration details and our program including speakers and topics.") and contained a number to call to opt out of future faxes. [1-1] at 2. Loop Spine says it wasn't the only company that received these unsolicited faxes from defendant—at least forty others received them, too, it claims on information and belief. [1] ¶ 18. Loop Spine says that, in addition to violating the TCPA and ICFA, defendant is liable for conversion and trespass to chattels because it effectively stole a piece of plaintiff's paper and some of plaintiff's printer ink by rendering them unusable. [1] ¶¶ 51–57, 65–70.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of the filings.

### III. Analysis

#### A. Illinois Consumer Fraud Act Claims

There are two types of claims under ICFA: those based on deceptive practices and those based on unfair practices. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–39 (7th Cir. 2019). Plaintiff brings an unfair-practices claim. [1] ¶ 36. To a state an unfair-practices claim, Loop Spine must adequately allege that defendant intentionally "committed a[n]…unfair act…, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant*, 934 F.3d at 736. The parties dispute whether sending a single unsolicited fax constitutes unfair conduct.

A practice is unfair under ICFA if it 1) "offends public policy;" 2) "is immoral, unethical, oppressive, or unscrupulous;" 3) "causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002)). Not all three factors need to be satisfied for a practice to be unfair under ICFA. *Robinson*, 201 Ill.2d at 418. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and quotations omitted).

> *1.  Whether a violation of public policy alone is enough to state an ICFA claim*

To show that an allegedly unfair practice offends public policy, a plaintiff must show "that the practice violates a standard of conduct embodied in a statute, the common law, or otherwise, i.e., if 'it is within at least the penumbra of some

3

common-law, statutory or other established concept of unfairness.'" *Leszanczuk v. Carrington Mortgage Servs., LLC*, 21 F.4th 933, 940–41 (7th Cir. 2021). Defendant doesn't contest that it violated public policy by sending the unsolicited fax. Instead, it argues that plaintiff cannot state a claim because the other factors (oppressive conduct and substantial injury) "weigh strongly against" finding liability for sending a one-page unsolicited fax. [16] at 4–5.

Although all three *Robinson* factors need not be present, some courts assume that a public-policy violation alone isn't enough to state a claim. *See Chicago Car Care, Inc. v. A.R.R. Enters., Inc.*, 2021 WL 1172262, at *2 (N.D. Ill. Mar. 29, 2021); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, 2017 WL 2619144, at *6 (N.D. Ill. June 16, 2017); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F.Supp.2d 610, 616 (N.D. Ill. 2009). But conduct either violates the law (public policy) or it doesn't, and if it does, it has satisfied the first *Robinson* factor as much as possible. At least one court has said that satisfying the public-policy factor is enough to state a claim. *See Johnson v. Allstate Ins. Co.*, 2009 WL 3230157, at *8 (S.D. Ill. Sep. 30, 2009) ("The presence of one of the three factors in sufficient degree is enough to prove an unfair-practices claim. Because Plaintiffs have met the pleading requirements with respect to violation of public policy, they state an unfair practices claim under the ICFA.").

But the Illinois Supreme Court seems to have assumed that some weighing of the second and third factors is necessary even if a violation of public policy is present. In *Robinson*, for instance, the court adopted the Connecticut Supreme Court's

4

standard for its own unfair trade-practices statute. 201 Ill.2d at 418. In that case, *Cheshire Mortgage Service, Inc. v. Montes*, the court found that the conduct at issue was a clear violation of both federal and state law. 223 Conn. 80, 107–12 (1992). But it didn't stop at that finding. Instead, it continued to analyze the conduct under the second and third factors, suggesting that a slam-dunk case on one wasn't necessarily dispositive. *Id.* at 112. Similarly, in *Newman v. Metropolitan Life Insurance Co.*, the Seventh Circuit didn't end its analysis after finding a public-policy violation. 885 F.3d 992, 1002–03 (7th Cir. 2018). And lower courts have almost uniformly taken this approach. *See, e.g.*, *Chicago Car Care, Inc.*, 2021 WL 1172262, at *2; *Western Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, 2006 WL 1697119, **4–6 (N.D. Ill. June 13, 2006); *Battle v. Bridgepoint Educ., Inc.*, 2017 WL 748634, at **1–2 (N.D. Ill. Feb. 27, 2017) (defendant's violation of Illinois Telephone Solicitations Act, though it offended public policy, didn't state an ICFA claim where second and third factors cut in other direction). I adopt that approach here because it seems most consistent with *Robinson*.

    2.    *Oppressive Conduct and Substantial Injury*

The second factor of the ICFA balancing test concerns whether the conduct is "immoral, unethical, oppressive, or unscrupulous." *Robinson*, 201 Ill.2d at 417–18. Conduct is oppressive when it leaves the consumer with no meaningful choice but to submit. *See id.* at 419–21. Loop Spine lacked a choice here. It had no way to avoid the unsolicited fax absent turning off its fax machine altogether. But when courts equate a lack of choice to oppression under the Consumer Fraud Act, the context is usually one of unequal bargaining power that forces a consumer to submit to a price increase

5

or other onerous terms. The complaint here does not suggest that kind of oppression. Loop Spine had no choice but to receive the fax, and it alleges that defendant shifted its advertising costs onto Loop Spine. [1] ¶¶ 41–42. It was not, however, put to a dilemma that overcame its free will in any meaningful sense. The complaint does not allege that a single unsolicited fax interfered with Loop Spine's ability to conduct its business, or that receiving the fax prevented it from some material, alternative course of action. Losing the option to not have one piece of paper consumed is not the kind of oppression this statute targets. The second *Robinson* factor weighs against a plausible allegation of unfairness.

The third factor of the unfairness analysis requires that the injury "1) be substantial; 2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and 3) be an injury that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citing *Cheshire Mortg. Serv., Inc.*, 223 Conn. 80, 113 (1992)). Defendant only contests the first criterion, arguing that the injury was not substantial because using one sheet of paper and a small amount of toner isn't substantial. [16] at 5. This assumes that plaintiff cannot measure the injury based on the *aggregate* harm of the class and must instead base it only on plaintiff's harm. But either way, as alleged here no single consumer was injured by anything more than one piece of paper and plaintiff alleges only that the class may have more than forty members. Forty unwanted pieces of paper is not a significant injury to competition or to consumers. Plaintiff's piece of paper and corresponding toner was

not a substantial injury, and without knowing whether defendant caused substantial injury to consumers generally, plaintiff's complaint falls short on this factor.

The first factor weighs in plaintiff's favor because defendant's alleged conduct violated public policy, but the other two factors, without more, weigh against a finding of unfairness. Notwithstanding the low threshold for notice pleading and plausibility, plaintiff's allegations do not state an Illinois Consumer Fraud Act claim. Count II is dismissed without prejudice, with leave to replead if plaintiff develops allegations that make it plausible that defendant's unsolicited fax(es) oppressed or caused substantial injury to consumers.

### B. Conversion and Trespass to Chattels

Loop Spine also brings common-law claims of conversion and trespass to chattels. To state a claim for conversion, Loop Spine must show that 1) it had a right to the property (here, the paper and ink), 2) it had an absolute and unconditional right to the immediate possession of the property, 3) it made a demand for possession, and 4) defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Loman v. Freeman*, 229 Ill.2d 104, 127 (2008); *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 97. The difference between conversion and trespass to chattels is a matter of degree. Restatement (2d) of the Law of Torts § 226 (for conversion, "the alteration must be so material as to change the identity of the chattel or its essential character," but damage that isn't that extensive may be a trespass to chattels). A trespass to chattels can be committed either by dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another. Restatement (2d) of the Law of Torts § 217.

The dispute between the parties is whether a de minimis standard applies to each cause of action. Courts in this district have split on the question. *Compare, e.g.*, *Chicago Car Care*, 2021 WL 1172262, at *3 (applying de minimis standard), *and Stonecrafters, Inc.*, 633 F.Supp.2d at 613–15 (same), *and Glen Ellyn Pharmacy, Inc. v. Kloudscript, Inc.*, 2019 WL 6467319, at **3–4 (N.D. Ill. Dec. 2, 2019), *with Centerline Equip. Corp.*, 545 F.Supp.2d at 782 (suggesting that, because Illinois courts recognize conversion claims where there are no damages at all (nominal damages), "they might well also recognize actions for very small damages"), *and R. Rudnick & Co. v. G.F. Prot., Inc.*, 2009 WL 112380, at **3–4 (N.D. Ill. Jan. 15, 2009), *and Glen Ellyn Pharmacy, Inc. v. Meda Pharms., Inc.*, 2011 WL 196925, at *2 (N.D. Ill. Jan. 13, 2011).

Some of the courts that have rejected conversion claims have cited the doctrine of *de minimis non curat lex*—the law does not concern itself with trifles. *See, e.g.*, *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F.Supp.2d 763, 768 (N.D. Ill. 2012); *G.M. Sign, Inc. v. Stergo*, 681 F.Supp.2d 929, 932–35 (N.D. Ill. 2009); *Rossario's Fine Jewelry, Inc. v. Paddock Publishing, Inc.*, 443 F.Supp.2d 976, 980 (N.D. Ill. 2006). But the de minimis rule is applied in cases of *indefinite* harm, where the injury—though not capable of being defined by a precise dollar amount—is miniscule. *Hessel v. O'Hearn*, 977 F.2d 299, 302–03 (7th Cir. 1992). The rule is *not* applied in cases where the injury is definite. *Id.* "A small definite loss is different from a small indefinite one…[I]f a loss is not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was any loss at all, courts

8

will invoke the *de minimis* doctrine and dismiss the case…[because] [t]he costs of such litigation overwhelm the benefits." *Id.* at 303 (quotations and citation omitted). But the rule for small definite losses is different, *id.*:

> The law does not excuse crimes or torts merely because the harm inflicted is small. You are not privileged to kill a person because he has only one minute to live, or to steal a penny from a Rockefeller. The size of the loss is relevant sometimes to jurisdiction, often to punishment, and always to damages, but rarely if ever to the existence of a legal wrong. It would be a strange doctrine that theft is permissible so long as the amount taken is small…[T]his [de minimis non curat lex] standard is never applied to the positive and wrongful invasion of another's property…[and never applied] to cases in which the monetary cost of the loss is, though tiny, readily determinable.

The harm here may be miniscule, but it is alleged to be definite. That's enough to bar application of the de minimis rule at this stage of the case. Plaintiff has stated a claim for conversion and trespass to chattels.

### C. Motion to Strike Affirmative Defenses

Plaintiff moves to strike a number of defendant's affirmative defenses. [20]. Two of those defenses—statute of limitations and laches—have since been withdrawn.[2] [29]. The remaining contested defenses are unclean hands, estoppel, waiver, ratification, and failure to mitigate damages. [17] at 12–13. Plaintiff also contests defendant's assertions that plaintiff's damages "have been caused by their own action or inaction" and that defendant "acted reasonably and with due care and substantially complied with all applicable statutes, regulations, ordinances, and/or other laws." [17] at 13–14.

---

[2] Defendant also withdrew its reservation of the right to assert other defenses in the future. [29] at 2.

9

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike affirmative defenses can therefore only be granted when the defenses are insufficient on the face of the pleadings—when "[t]hey are nothing but bare bones conclusory allegations," lack "any short and plain statement of facts," and "fail[] totally to allege the necessary elements of the alleged claims." *Id.* at 1295. Even then, I have "considerable discretion" in deciding whether to strike affirmative defenses. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

I could strike the many affirmative defenses that are legal conclusions with no facts. *See* [17] at 12–13 ("The claims asserted in the Complaint are barred…by the doctrines of waiver, estoppel, laches, unclean hands, ratification, and/or applicable statutes of limitations," "Plaintiff's damages, and the damages of the putative class members, if any, have been caused by their own action or inaction," "Plaintiff and the putative class members have failed to mitigate their damages."). But striking those defenses would not save time or resources in the litigation and failing to strike them will not prejudice plaintiff. *See* Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (motions to strike frequently denied when the challenged allegations will cause no prejudice to the moving party). If defendant files a motion

for judgment on the pleadings or motion for summary judgment, any issues with the defenses being vague or conclusory can be solved then.

## IV. Conclusion

Defendant's motion to dismiss, [16], is granted in part, denied in part. Count II is dismissed without prejudice. Plaintiff's motion to strike, [19], is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 22, 2023