UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOOP SPINE & SPORTS CENTER, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN COLLEGE OF MEDICAL QUALITY, et al., <br><br> Defendants. | No. 22 CV 4198 <br><br> Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Loop Spine & Sports Center, Ltd. ("Loop Spine"), an Illinois chiropractic and sports injury company, received an unsolicited fax on August 8, 2022, advertising an upcoming conference hosted by the American College of Medical Quality, Inc. ("ACMQ"). Loop Spine now sues ACMQ—along with Affinity Strategies, LLC ("Affinity") and former ACMQ executive director Daniel J. McLaughlin, who they believe helped facilitate the fax—under the Telephone Consumer Protection Act ("the Act") for the alleged junk fax. Loop Spine also sues all three defendants for the common-law torts of conversion and trespass to chattels for their unauthorized use of Loop Spine's fax machine, ink, and paper. Loop Spine further seeks to represent a class of other individual or entities who they believe received unauthorized faxes advertising the ACMQ conference.

ACMQ, Affinity, and McLaughlin all move to dismiss Loop Spine's second amended complaint. [189, 190, 193]. All three motions are denied.

## I. Legal Standards

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint (as the Court does in the "Background" section below) and determines whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 453 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[L]egal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (citation and quotations omitted).

## II. Background

ACMQ is a professional organization focusing on healthcare quality. [177] ¶ 11. On August 8, 2022, Loop Spine received a one-page fax advertising ACMQ's "Care After Covid" conference. *Id.* ¶ 113; [177-1] at 2.[1] Loop Spine did not authorize this fax and had no prior relationship with ACMQ. [177] ¶ 119. Loop Spine also believes that at least 40 other residents of Illinois received similar faxes in a "mass broadcast." *Id.* ¶¶ 120, 122.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers for exhibits [177-1] are taken from the CM/ECF header placed at the top of the filings.

Loop Spine alleges that the faxes were engineered by Affinity, a company that describes itself as "provid[ing] professional associations in the health care industry customized services to improve operations, member engagement, and marketing." *Id.* ¶ 12; *see also id.* ¶ 21. An Affinity client, ACMQ received such services from Affinity. *Id.* ¶¶ 12–16. Per a written agreement between ACMQ and Affinity, this included managing ACMQ's day-to-day business and assisting ACMQ with increasing its membership and promoting its annual conference. *Id.* ¶¶ 22–24, 68–69. To help increase conference attendance, Affinity provided marketing services which included "optimiz[ing] existing marketing channels and platforms for [] ACMQ including mass email marketing" to ACMQ members. *Id.* ¶ 61. While ACMQ had a board, it had no employees, and communications with ACMQ were managed through Affinity. *Id.* ¶¶ 27–33.

When ACMQ's executive director—who was also an Affinity employee—departed in early 2022, Affinity recommended McLaughlin as a replacement. *Id.* ¶¶ 34, 42–45. After only "hasty" vetting for the position, McLaughlin began work as ACMQ's executive director, though during the relevant period he was paid by Affinity through McLaughlin's sole-proprietor limited liability corporation. *Id.* ¶¶ 45–46, 48–49, 52, 58, 67. McLaughlin's duties included implementing the marketing services and strategic plan for ACMQ developed by Affinity, scheduling and running meetings, organizing and promoting the 2022 ACMQ conference, and communicating with Affinity employees. *Id.* ¶¶ 59–60. Affinity instructed McLaughlin to work with

Affinity employees on marketing and mass emails, and McLaughlin reported to both Affinity and ACMQ. *Id.* ¶¶ 64–65.

This working relationship between ACMQ, Affinity, and McLaughlin included promoting ACMQ's conferences. *Id.* ¶¶ 68–69, 76. For the 2022 "Care After Covid" conference, Affinity helped arrange logistics and sponsored the conference as well. *Id.* ¶¶ 79–80. ACMQ and McLaughlin decided to use fax broadcasting to advertise the conference, and McLaughlin purchased a list of fax recipients for the broadcast from a former colleague. *Id.* ¶¶ 89–92.

On July 29, 2022, McLaughlin used an Affinity email address to communicate his plan to "dramatically extend" the reach of the conference advertising with "the ability to mass fax or email," and he sent that communication to the ACMQ board of trustees and executive committee, as well as Affinity's chief executive officer and chief operating officer. *Id.* ¶ 102. A week later—just before the August 8 fax at issue—McLaughlin sent another email to ACMQ and Affinity leadership concerning "the plan to mass broadcast faxes intending to reach approximately 16,000 doctors in Chicago and surrounding areas to advertise the 2022 annual conference." *Id.* ¶ 103. Neither Affinity nor ACMQ objected to McLaughlin's plan or otherwise discouraged the August 8 fax; in fact, ACMQ's president complimented the "blast fax marketing strategy." *Id.* ¶¶ 104–105.

Loop Spine filed a complaint against ACMQ just two days later, on August 10, 2022, [1], eventually adding Affinity and McLaughlin as defendants in an amended complaint. [63]. Affinity's motion to dismiss that amended complaint, [87], was

4

granted at a January 10, 2024 hearing, but Loop Spine was given leave to file the instant complaint to attempt to cure the deficiencies identified by the court previously assigned to this matter. [99]; [186].

### III. Analysis

#### A. ACMQ's Motion To Dismiss

ACMQ's motion to dismiss focuses on Loop Spine's claims of conversion (Count II) and trespass to chattels (Count III). [189] at 2–4.[2] ACMQ treats the analysis for both claims as identical, so the Court addresses them together. ACMQ concedes that the court previously assigned to this matter denied its earlier motion to dismiss these counts—and did so by rejecting the same grounds that ACMQ advances now. *Id.* at 1; [46] at 7–9. But according to ACMQ, the previous court "expressed a willingness to revisit this issue on the matter of a *de minimis* defense." [189] at 1.

In pressing for reconsideration of its earlier motion, ACMQ argues that "[c]ourts in this district regularly reject conversion claims for unsolicited faxes pursuant to the de minimis doctrine," *id.* at 2–3 (inexactly quoting *Chicago Car Care, Inc. v. A.R.R. Enterprises, Inc.*, 19-C-07687, 2021 WL 1172262, *3 (N.D. Ill. March 29, 2021)), and that "the losses pleaded by [Loop Spine] here are too vague to be determinable or definite," *id.* at 4. ACMQ suggests that the denial of its previous motion, which relied on *Hessel v. O'Hearn*, 977 F.2d 299, 302–03 (7th Cir. 1992),

---

[2] ACMQ's motion does not include page numbers so the Court uses the page numbers indicated in the CM/ECF header placed at the top of the filings.

misapprehended *Hessel*, as "the pleaded facts in this case amount to harm much less definite than that contemplated . . . in *Hessel*." [189] at 4.

The Court sees no reason to depart from the previous decision on this issue. *Chicago Care* did apply the *de minimis* doctrine to dismiss claims of conversion and trespass to chattels related to a one-page fax, but district courts' decisions do not bind each other, and, indeed, the denial of ACMQ's previous motion to dismiss cited *Chicago Car Care* in considering that "[c]ourts in this district have split on the question" of whether the *de minimis* doctrine would apply here. [46] at 8; *see, e.g., Glen Ellyn Pharmacy, Inc. v. Meda Pharms., Inc.*, No. 09 CV 4100, 2011 WL 196925, at *2 (N.D. Ill. Jan. 13, 2011). That another district court might have ruled differently—put another way, the mere fact that a split exists within the district—does not compel a different result.

Furthermore, the distinction ACMQ relies on in *Hessel*, which concluded that the theft of a single can of soda was not *de minimis*, is between losses that were merely small and those that were "not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was a loss at all" because "[t]he costs of such litigation overwhelm the benefits." [189] at 3–4; *Hessel*, 977 F.2d at 303. The amount of ink used in a one-page fax may be miniscule but it's not indefinite, and the Court sees no legally relevant distinction between a single can of soda and a single sheet of paper.

ACMQ's motion to dismiss Counts II and III is denied.

6

### B. McLaughlin's Motion to Dismiss

McLaughlin also moves to dismiss Counts II and III. [193] at 1. Because McLaughlin adopted ACMQ's arguments, and made none of his own, his motion is dismissed for the same reasons.

### C. Affinity's Motion to Dismiss

#### 1. *Telephone Consumer Protection Act*

The Act prohibits "unsolicited advertisements" unless "the sender" of the advertisement meets certain requirements.[3] 47 U.S.C. § 227(b)(1)(C). A "sender," for the purpose of the Act, is "the person [who] had direct, personal participation in or personally authorized" the fax, or "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 947 (7th Cir. 2020); 47 C.F.R. § 64.1200(f)(10). Plaintiff does not (indeed, cannot) allege that Affinity personally sent or personally authorized the fax. And no Affinity goods or services were advertised in the August 8 fax. So Affinity's liability under the Act hinges on whether McLaughlin sent the August 8 fax on its behalf.[4]

Loop Spine argues that both Affinity and ACMQ are "senders" of the fax, via their agent McLaughlin, because ACMQ used Affinity to manage day-to-day

---

[3] Neither party asserts that the August 8 fax met any of the exceptions, so the Court does not address them.

[4] ACMQ does not appear to dispute that it would qualify as a "sender" for the purpose of the Act.

7

operations at ACMQ generally and to promote the 2022 conference specifically. [227] at 10–11. To support this argument, Loop Spine highlights its allegations that the fax was designed by McLaughlin and another Affinity affiliate, and that McLaughlin informed his superiors at both Affinity and ACMQ that he was planning to send the fax. *Id.* at 11; [177] ¶¶ 97, 102–104. All this, Loop Spine contends, is enough to reasonably infer that Affinity is vicariously liable for McLaughlin's actions in sending the fax. [227] at 10–11.

For its part, Affinity argues that because McLaughlin is alleged to have sent the fax "[o]n behalf of Defendant ACMQ," [190] at 5 (quoting [177] ¶ 134), and because the fax does not mention Affinity, Loop Spine has not alleged facts indicating Affinity itself directly cause the fax to be sent, *id.* at 5–6. Affinity further argues that Loop Spine has not adequately alleged that Affinity has any vicarious liability for McLaughlin's actions. *Id.* at 9–14.

The Seventh Circuit has instructed that traditional agency rules determine whether a junk fax is sent "on behalf" of a principal, so Affinity could be liable for McLaughlin's actions under theories of actual authority, apparent authority, or ratification. *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). One agent can act for multiple principals, so the fact that McLaughlin may also have sent the fax on behalf of ACMQ does not immunize Affinity from vicarious liability. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013) ("An agent can serve multiple

principals at once"); *Fed. Trade Comm'n v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 776 (N.D. Ill. 2016); Restatement (Third) of Agency § 3.14 cmt. b (2006).

Theories of apparent authority and ratification can be quickly dispatched. Apparent authority requires the principal (here, Affinity) to "speak, write or otherwise act towards a third party" (here, Loop Spine) and the principal's "conduct must make the third party reasonably believe that [the principal] has consented on [its] behalf by someone purporting to act" for it. *Clark*, 816 F.3d at 939. Loop Spine has not alleged that Affinity spoke, wrote, or otherwise "acted towards" it, so there was no apparent authority. And while an agency relationship can be created when a party affirms the "prior act" of another, Restatement (Third) Of Agency § 4.01 (2006), Loop Spine's theory of ratification relies on emails notifying Affinity of McLaughlin's contemplated *future* act, [177] ¶¶ 102–03, 136, and Affinity's alleged silence in the face of those emails does not support the inference that Affinity had the necessary "full knowledge of the facts and the choice to either accept or reject the benefit of the transaction." *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013) (quoting *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir.2004)); [177] ¶¶ 133–34.

What is left then is actual authority, which requires that "(1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency." *Bilek*, 8 F.4th at 587. Actual authority can either be express—that is, Affinity directly told McLaughlin to send the fax—or implied. *See Moriarty v. Glueckert Funeral Home,*

9

*Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998) (describing implied actual authority as "that authority which is inherent in an agent's position and is, simply, actual authority proved through circumstantial evidence"). Loop Spine does not allege that Affinity expressly told McLaughlin to send the August 8 fax, so the question is whether the second amended complaint pleads facts sufficient to support an inference of implied authority.

It does. The Court first notes that it need not decide whether Loop Spine's allegations are sufficient, if true, to prove vicarious liability for Affinity. *Bilek*, 8 F.4th at 587. Rather, at this stage Loop Spine must merely allege enough details to render their theory of agency liability plausible. *Id.* Loop Spine has alleged that McLaughlin was compensated by Affinity and described by Affinity as "part of [its] management team"; that Affinity and ACMQ "co-marketed and together participated in and controlled" McLaughlin's actions; that Affinity "instructed" McLaughlin to work with Affinity employees on marketing and email campaigns; that McLaughlin and another Affinity affiliate helped design the August 8 fax; and that McLaughlin's responsibilities included "carrying out the marketing services and strategic plan outlined by" Affinity. [177] ¶¶ 52, 57–59, 64, 97, 125; [177-1] at 25, 27.

At this stage of the litigation, these allegations are enough to plausibly infer that a principal/agent relationship existed between McLaughlin and Affinity, that Affinity controlled or had the right to control McLaughlin's responsibilities carrying out the marketing services that Affinity provided for ACMQ, and that sending the August 8 fax was a marketing communication within the scope McLaughlin's agency

10

for Affinity. *Bilek*, 8 F.4th at 587. Loop Spine has thus sufficiently alleged vicarious liability for its claim against Affinity under the Act to survive.

### 2. *Conversion and Trespass to Chattels*

Agency liability under the Act follows traditional agency rules, *see Clark*, 816 F.3d at 938, so if McLaughlin acted as Affinity's agent in sending the August 8 fax for the purpose of the Act, he also acted as its agent for the purpose of the common-law torts of conversion and trespass to chattels. And, as discussed above, Loop Spine has stated a claim for both.

### IV. Conclusion

Loop Spine has stated a claim for a violation of the Telephone Consumer Protection Act and the torts of conversion and trespass to chattels against ACMQ, Affinity, and McLaughlin. All three motions to dismiss [189, 190, 193] are therefore denied. Defendant Affinity is directed to answer the second amended complaint on or before November 19, 2024.

Defendants' responses to plaintiff's class-certification motion are due on or before November 19, 2024, and plaintiff's reply in support of its class-certification motion is due one or before December 3, 2024.

_____
Georgia N. Alexakis
United States District Judge

Date: 10/22/24