UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOOP SPINE & SPORTS CENTER, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN COLLEGE OF MEDICAL QUALITY, et al.,<br><br>Defendants. | No. 22 CV 4198<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Loop Spine & Sports Center, Ltd. ("Loop Spine"), an Illinois chiropractic and sports injury company, received an unsolicited fax on August 8, 2022, advertising an upcoming conference hosted by the American College of Medical Quality, Inc. ("ACMQ"). Loop Spine sued ACMQ—along with Affinity Strategies, LLC ("Affinity") and former ACMQ executive director Daniel J. McLaughlin, who they believe helped facilitate the fax—under the Telephone Consumer Protection Act ("the Act") for the alleged junk fax, and for the common-law torts of conversion and trespass to chattels for unauthorized use of Loop Spine's fax machine, ink, and paper. Loop Spine believes others received the fax and seeks to represent a class of those affected by it.

Loop Spine now moves for class certification under Federal Rule of Civil Procedure 23. [247]. For the reasons given below, the motion is granted.

**I.      Legal Standards**

On a motion for class certification under Rule 23, "[t]he party seeking certification bears the burden of demonstrating that certification is proper by a

preponderance of the evidence." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). Failure to satisfy any required element precludes class certification. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993).

If there are material factual disputes that bear on the requirements for class certification, the Court must resolve those evidentiary disputes before deciding whether to certify the class. *Bell*, 800 F.3d at 377 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Class-certification proceedings are not a "dress rehearsal for the trial on the merits," and the Court can only evaluate evidence to decide whether certification is proper. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). However, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo*, 249 F.3d at 676). As the Seventh Circuit explained in *Szabo*, in the context of a hypothetical in which the district court were presented with wildly disparate estimates of the class size:

> Before deciding whether to allow a case to proceed as a class action … a judge should make whatever factual and legal inquiries are necessary under Rule 23. This would be plain enough if, for example, the plaintiff alleged that the class had 10,000 members, making it too numerous to allow joinder, while the defendant insisted than the class contained only 10 members. A judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would receive evidence (if only by affidavit) and resolve the disputes before deciding whether to certify the class.

*Szabo*, 249 F.3d at 676 (internal citation omitted).

## II. Background

ACMQ is a professional organization focusing on healthcare quality. [177] ¶¶ 11. ACMQ was a client of Affinity, which provided marketing services to healthcare organizations and helped ACMQ identify its new executive director, McLaughlin. To advertise ACMQ's 2022 "Care After Covid" conference, McLaughlin proposed a "blast fax" to potential attendees in the Chicago area.[1] *Id*. ¶ 113; [177-1] at 2.[2]

The parties agree on the following. McLaughlin engaged Jim Dodge, a personal acquaintance, to help send a blast fax, and Dodge introduced McLaughlin to Michael Henry,[3] who was in the business of sending such faxes. [248] at 3–4; [268] at 2. McLaughlin and Henry put together a list of Chicago area doctors with fax numbers for the blast fax, and according to Loop Spine finalized a list of around 13,850. [248]

---

[1] As discussed in the Court's order denying defendants' motion to dismiss, the parties dispute the precise nature of the relationships among ACMQ, Affinity, and McLaughlin. *See generally* [253]. Although the parties' class-certification briefs spend substantial time on this dispute, the Court need not resolve it in order to resolve plaintiff's class certification motion.

[2] Bracketed numbers refer to entries on the district court docket. Page numbers for exhibits [177-1] are taken from the CM/ECF header placed at the top of the filings.

[3] As Loop Spine notes, *see* [248] at 9, Henry is known to the federal courts. *See In the Matter of Michael F. Henry*, Executive Committee Order, ECF No. 1, 07 CV 7159 (N.D. Ill.) (NDIL filing bar); *Henry v. Hall*, No. 23-2408 (7th Cir. June 6, 2024) (Seventh Circuit filing bar); *United States v. Henry*, No. CR 08-19, 2008 WL 11449218, at *1 (E.D. La. Oct. 8, 2008) (outlining Henry's federal criminal convictions for threatening to assault federal officials). Because it is not clear to the Court based on the record before it that the particular nature of Henry's legal history bears on his character for truthfulness—and because the Court ultimately finds that Loop Spine has met its burden, Henry's history notwithstanding—the Court has not considered Henry's history in resolving Loop Spine's class-certification motion. *C.f.*, Fed. R. Evid. 609 (limiting impeachment by evidence of a criminal conviction in several instances, including where more than 10 years have passed since the witness's conviction or release from confinement for it and where a court cannot readily determine that the elements of the crime required proving a dishonest act or false statement").

at 3–4; [267-2] 114:20–115:2; [268] at 7. Henry then sent at least some faxes, including the August 8, 2022 fax to Loop Spine that generated this lawsuit. [248] at 7; [268] at 2. After Loop Spine filed its lawsuit on August 10, 2022—just two days after receiving that fax—McLaughlin instructed Henry to stop sending the faxes. [248-4] at 92; [268] at 7.

The parties fundamentally disagree on two substantive factual issues related to class certification. First, the parties disagree on how many faxes were actually sent. Loop Spine contends that it was at least 6,500, while defendants counter that a mere 28 test faxes were actually sent before McLaughlin cancelled the blast. [248] at 9; [267] at 3; [268] at 8. Second, the parties disagree on whether Loop Spine or other putative class members gave permission for the fax. Defendants assert that Henry called Loop Spine, spoke to an employee named Kate Borris (who Henry refers to as "Kathy"), and obtained Borris's oral consent before sending the fax. [267] at 6; [267-2] 158:8–159:20; [268] at 2. Loop Spine disputes this. [248] at 14; [248-4] 29:14–30:3.

There's an additional complication. Upon being informed of the lawsuit by McLaughlin and directed to cease the blast fax, Henry says that he deleted all the relevant data and records. *See* [267-2] 110:16–23 ("When Dan [McLaughlin] told them to stop, I cancelled everything, deleted everything."). Loop Spine wants an adverse inference on this basis. *E.g.*, [248] at 11. For their part, defendants argue an adverse inference is inappropriate because Henry is not a defendant and because, they maintain, Loop Spine has waived any request for an adverse inference by not sufficiently including it in the motion for class certification. [268] at 3.

4

The facts relevant to resolving these disputes are as follows: As of Thursday, August 4, 2022, McLaughlin and Henry had compiled a list of "about 13,500 numbers" of Chicago-area doctors. [248-1] at 109.[4] On Saturday, August 6, at 2:22 p.m., Henry emailed McLaughlin and Dodge a sample one-page fax and told them: "I have scheduled this to run starting at 12 noon Sunday – if your [sic] happy with what the customer will receive it will go out." [248-1] at 110. At 4:30 p.m. that same day, McLaughlin replied: "Yeah, let's go with this … Let's see what happens and I can bring a check to you Monday if that's ok." *Id.* at 111.

On Sunday, August 7, at 12:40 p.m., Henry wrote to McLaughlin: "[W]e are sending 14352[] [f]axes today [a]nd will send a follow up on Friday to 6641." *Id.* at 113. Henry added "20993," which is the sum of 14,352 and 6,641. *Id.* With respect to payment, Henry wrote: "The list was 529 [dollars] plus tax so 569 [dollars]." *Id.* He added: "Jim had told you .07 [cents] per fax … [b]ut [j]ust call it 1000 [dollars] for everything." *Id.* McLaughlin responded: "Are you sure? I appreciate but don't want you guys losing money." *Id.* at 114.

On Monday, August 8, at 8:42 a.m. Henry and McLaughlin arranged a time via email for McLaughlin to give Henry the check. *Id.* at 114. And in another email exchange that Monday morning, McLaughlin asked Henry "[a]ny idea how it went yesterday," to which Henry responded: "We got a little over 6500 faxes delivered. Second attempt will Picked [sic] up another 750." *Id.* at 115.

---

[4] [248-1] incorporates a number of documents with different paginations, so the Court uses the page number of the PDF file.

5

But on Thursday, August 11, 2022—the day after Loop Spine filed its complaint—Henry sent McLaughlin and Dodge an email with the subject line: "This attorney is known for filing bogus fax lawsuit and trying to get quick settlements." [248-1] at 116. Henry's email read:

> On Friday August 5, 2022 I was calling various numbers from the internet with a dial phone to see if we could fax them information on a conference to be held in Chicago. I contacted Loop Spine … This call was at approximately 2 pm. I spoke with Kate. After a brief conversation she told me to send either and email to office@gmail.com or to fax it to the office 312-269-5559.
>
> On Monday I used a fax machine to send a single fax to the conference after Kate's request to send the information.

*Id.*

Affinity explains the apparent discrepancy between what Henry told McLauglin before and after Loop Spine's lawsuit by asserting that "a little over 6500 faxes delivered"—the phrase Henry used in his August 8 email—referred to "the phone numbers sent to [a data] cleaning service for analysis and in no way was intended to convey that any fax advertisements were actually sent." [268] at 13. Affinity supports this assertion with Henry's April 2024 affidavit, which uses identical language. [145] ¶ 7. But defendants point to no pre-suit communication between McLaughlin and Henry that mentions a data cleaning service; McLaughlin's deposition testimony indicates he believed that August 7 was the day of the fax transmission, *see* [248-1] at 48–49; and Henry testified at his deposition that he has no records whatsoever of any communication or transaction with the data cleaning service to which he was purportedly referring, *see* [267-2] 107:18–109:9.

6

Affinity also explains the "single fax" that Loop Spine received by asserting that in the days before Loop Spine's lawsuit, Henry sent "a test run in which a small group of phone numbers were manually dialed by Henry and further information about the number would be gathered, including whether the persons who answered would agree to receive a facsimile advertisement." [268] at 13–14 (citing [145] ¶ 13). Affinity's explanation, in other words, is that Loop Spine's fax was part of that modest "test run." This explanation is corroborated in part by Henry's deposition, during which he testified that he called Loop Spine and spoke to "Kathy," who gave him the Loop Spine fax number and permission to send a fax. [267-2] 158:8–159:20. At the same time, Henry testified that he could not recall if he had discussed the test run with McLaughlin. *Id.* 115:18–21. And Borris, the Loop Spine employee who would have answered the phone, testified that she had no recollection of speaking to Henry and that she would not have granted permission to send a fax advertisement because it was against Loop Spine's office policy to do so. [248-3] 23:19–24:1, 29:19–30:3.

Also at his deposition, Henry testified that he deleted all records associated with the blast fax when McLaughlin informed him of the lawsuit and told him to stop the project. *Id.* 110:15–23; [248-1] at 52. Despite this lack of records, Henry recalled that he called "probably … a hundred" people and that "22 people said yes and everybody else said no" to the test fax transmission. [267-2] 111:21–24. Henry's affidavit, filed a month earlier, gives the numberas 28. [145] ¶ 17. Defendants present no evidence for either number beyond Henry's testimony and affidavit. Defendants also do not address the discrepancies in Henry's recollections—i.e., Henry's testimony

7

reporting 22 faxes, Henry's affidavit attesting to 28 faxes, and Henry's August 11, 2022 email in which he reported sending "a single fax."

### III. Analysis

Rule 23(a) of the Federal Rules of Civil Procedure provides the prerequisites for bringing a class action in federal court, including (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Plaintiffs who establish all of those elements must then show they qualify for a particular type of class action under Rule 23(b). In the instant case, Loop Spine argues they meet the Rule 23(b)(3) requirement that common questions of law and fact predominate and that class action resolution is superior to other methods. [248] at 12, 18. The Court will proceed through each class action requirement in turn.

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impractical." The Seventh Circuit has instructed that "[w]hile there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Henry's pre-suit communications feature prominently in Loop Spine's arguments regarding numerosity, and the Court finds that they provide a sufficient basis to resolve this aspect of the class certification motion. In particular, Loop Spine points to the following communications between Henry and McLaughlin: the Saturday, August 6 email stating "I have scheduled this to run starting at 12 noon

Sunday – if your happy with what the customer will receive it will go out"; the Sunday, August 7 email stating "we are sending 14352 faxes today"; and the Monday, August 8 email stating "we got a little over 6500 faxes delivered" and that the "second attempt" will pick up another 750. [248] at 6–7, 9–11. Based on these communications, Loop Spine contends that there were at least 6,500 "faxes delivered." *Id.* at 9. If that number is correct, a class including just 1% of the fax recipients would satisfy numerosity.

The communications between McLaughlin and Henry regarding payment for Henry's services lend further support to Loop Spine's position that the numerosity requirement has been satisfied. It is hard to believe that McLaughlin and Henry corresponded about how much Henry was owed for his work—and even when and where McLaughlin would deliver payment to Henry—if the blast fax project was, as Affinity contends, nowhere near completion. *See* [268] at 12–15 (Affinity describes a ten-step process for sending a blast fax and argues that "McLaughlin, et al. never got past step three").

For their part, defendants rely on Henry's post-suit deposition and affidavit to argue that rather than 6,500 faxes, Henry only sent 28 (or 22), and those faxes only went to entities from which he had obtained advance permission. [267] at 3; [268] at 3, 7–8. But Henry's story that before sending any fax he personally "called a hundred-plus people trying to find people we could send this," *see* [267-2] 111:20–24, only emerged after he learned of the lawsuit and is not corroborated by any contemporaneous records. In addition, Henry's and Affinity's otherwise very

9

thorough explanation of a standard blast fax process omits any mention of an initial batch of phone calls, *see* [268] at 12–14; [145] ¶¶ 5–12, which makes Henry's "test run" explanation suspect. Henry's testimony that he immediately deleted all relevant documents upon learning of the litigation further reduces his post-lawsuit credibility.

For similar reasons, plaintiff's evidence is not sufficiently undermined by Affinity's contention that Henry was referring to phone numbers being sent to a data cleaning firm—and not "sending … faxes" or "faxes delivered"— when Henry told McLaughlin that he had "scheduled this to run starting at 12 noon Sunday," that "we are sending 14352 faxes today," and that he "got a little over 6500 faxes delivered." [268] at 13. But the most natural reading of "faxes delivered" is that Henry was referring to faxes that were delivered. Additionally, there is no record of Henry discussing this data cleaning firm with McLaughlin before the lawsuit; Henry asserts that he deleted all correspondence with the firm, which (again) serves to reduce his post-lawsuit credibility; and Henry further asserts that he kept no receipts or records of his payments to the firm, which he somewhat bafflingly testified that he did not consider a business expense. [267-2] 108:5–110:23.

In contesting numerosity, defendants also emphasize the absence of any fax transmission logs, which, they contend, "are or should be available from third parties if they exist." [267] at 3; *see also* [268] at 11. Fax transmission records might settle the issue of numerosity definitively, but the absence of fax transmission records does not preclude numerosity. *See Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 859 (N.D. Ill. 2018) ("As numerous courts have observed, a

10

contrary holding denying class certification based on the absence of records would create perverse incentives."), And while the Court sees no need to resolve Loop Spine's request for an adverse inference on that issue, *see* [248] at 11, it (again) notes that Henry's decision to delete records that might have definitively resolved the issue certainly does not benefit defendants' version of events. ACMQ argues that Loop Spine "has no real reply to ACMQ's observation that any mass fax transmission log … would be available through third parties," [292] at 3, but Loop Spine in fact explains at some length its attempts to obtain records from the third-party vendors Henry used and submits evidence that those vendors either never had or did not retain fax transmission records. [248] at 10–11. Defendants do not challenge Loop Spine on this point or attack that evidence, and so Loop Spine has explained the absence of fax transmission records to the Court's satisfaction.[5]

The Court stresses that at this class-certification stage, it has not "weigh[ed] evidence to determine whether the plaintiff class will prevail on the merits." *See Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 574 (N.D. Ill. 2023) (cleaned up). To the extent it has "delve[d] into the merits," it has done so only because this inquiry was "necessary to determine whether the class certification ***requirements*** are met." *Id.* (citing *Szabo*, 249 F.3d at 676) (emphasis in original). Having employed this approach, for the reasons set forth above, the Court concludes that by pointing to

---

[5] Loop Spine has identified 45 people on the fax list that it says received the faxes. [248] at 11. Affinity argues that this shows that Loop Spine will be unable to satisfy numerosity. [268] at 18. But Loop Spine need not identify specific class members at this phase, *see Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005), and the Court understands Loop Spine's use of the 45 respondents to go towards ascertainability and feasibility of class notice, and so does not consider them for determining numerosity.

11

Henry's pre-suit communications with McLaughlin, plaintiffs have presented a preponderance of evidence that satisfies the numerosity requirement. And for the reasons also set forth above, defendants' efforts to erode that evidence—by pointing to other statements by Henry, made after he knew about Loop Spine's lawsuit—do not move the needle. Ultimately, a jury might weigh Henry's competing statements differently, but that possibility does not bar class certification. *Cf. id.* (recognizing disputes over witness credibility and the sources of witnesses' knowledge at the class certification stage and recognizing that the certified class might still "go down in flames on the merits," and yet nonetheless concluding plaintiffs had proffered enough witness testimony to support a legal theory common to the entire class).

Thus, at this juncture, the Court concludes that Henry's emails stating that thousands of faxes were delivered—and Loop Spine's receipt of the fax at issue during the timeframe when Henry said he was sending the blast fax—make it more likely than not that numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The key is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up). Put another way, the Court must determine if the question is "capable of proof at trial through evidence that is common to the class rather than individual members." *Bell*, 800 F.3d at 375. A single common question of law or fact is sufficient to establish commonality, *id.* at 374, and the Court need not

12

resolve that question at this point, *id.* at 376. Rather, plaintiffs must merely demonstrate that a question susceptible to class-wide resolution exists. *Id.* at 375.

The Seventh Circuit has instructed that "[c]lass certification is normal in litigation under [the Act], because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013). Nothing about the instant case persuades the Court to depart from this general principle. It is undisputed, for example, that an identical fax was sent to all recipients by the same people as part of the same marketing project for the same conference. The answer to the questions of whether this fax was an advertisement for the purpose of the Act, and, if so, who is liable for sending it will, be common to all class members.

Defendants argue that the distinction between traditional and online "efaxes" defeat commonality. [267] at 8. (They raise this distinction in connection with commonality and numerosity, but no other requirement under Rule 23.) But commonality requires one common question, not the absence of any individual questions. *See Bell,* 800 F.3d at 375. Loop Spine has thus met its burden of establishing commonality.

### 3. Typicality

Next is typicality under Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To satisfy typicality, plaintiffs' claims must "rise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1026 (7th Cir. 2018). The individual claims may

13

feature some factual variations as long as they "have the same essential characteristics." *Id.*

Loop Spine argues that it is typical of the class because "each of the class members has been subjected to the same practice as the named plaintiff, namely they each were sent faxes in the form of Exhibit A, by or on behalf of Defendants, promoting the ACMQ conference." [248] at 17. The Court agrees that Loop Spine's claim—that it received a single fax advertisement for the ACMQ conference—is typical of the proposed class. And defendants make no arguments against typicality.

Loop Spine has thus established typicality.

### 4. Adequacy

Representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry applies to the adequacy of both the named plaintiffs and plaintiff's counsel. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)).

Defendants challenge Loop Spine's adequacy as a class representative because "Mike Henry has testified that he received permission from Kate of Loop Spine, and his testimony is very telling on this issue." [267] at 10; [268] at 4 n.2 (adopting ACMQ's adequacy arguments). But Henry's testimony is countered by Borris's more than plausible testimony that Loop Spine had a policy against giving out its fax number for solicitations, and Henry's testimony on this point—flawed for the reasons the Court has already articulated—does not defeat Loop Spine's showing by a

14

preponderance. Defendants identify no other deficiency with Loop Spine as class representative, and the Court sees none.

Defendants do not challenge the adequacy of plaintiff's attorneys to represent the putative class, and the Court concludes plaintiff's counsel is adequate. The Court sees no apparent conflict between plaintiff's counsel and the class, and plaintiff's counsel notes their significant experience in similar litigation. [248] at 17–18.

Loop Spine thus has established adequacy of representation.

### B.     Rule 23(b)

Loop Spine has therefore met the Rule 23(a) criteria, but that is not enough: Loop Spine also must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court addresses predominance and superiority in turn.

The predominance requirement is satisfied when "common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). The Court has no difficulty finding that common questions would predominate here. All putative class members' claims arise under the Act and concern an identical fax message. The questions of whether that fax was an advertisement, whether sending it violated the Act, and which, if any, of the defendants are liable for that violation will have identical answers for the entire class.

Defendants argue that predominance is defeated by individual questions around consent to the fax. [267] at 5–8; [268] at 18–19. But the Court is not persuaded by this argument for two reasons. First, defendant's consent argument can also be resolved on a class-wide basis, as it relies on identical evidence for each potential class member: Henry's testimony. [267] at 8 ("Based on the testimony of Mike Henry, he obtained permission from LOOP SPINE and *every entity he faxed*.") (emphasis added). Henry identified no individual fax recipient other than Loop Spine, so the question of consent is necessarily answered identically for all other potential class members: either the fact-finder credits Henry's testimony that he obtained consent for "every entity he faxed" or not, but there is no evidence before the Court that would provide a basis for differentiating between recipients.

And even if a fact-finder credits Henry's testimony, defendants run into another significant problem. Prior express consent is an affirmative defense under the Act, and defendants bear the burden of proving it. *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1126 (7th Cir. 2023). But, critically, the "[e]vidence of permission to send *faxes generally* does not establish prior express permission to *fax advertisements*," *id.* (emphasis added), and there is nothing in Henry's affidavit or deposition testimony that indicates he received permission to send a fax advertisement rather than a fax generally. *See, e.g.*, [145] ¶ 4 (discussing "recipients that gave prior permission to receive a fax from us"); [267-2] 158:14–18. ("Q: And just so I understand, the purpose of that phone call to Loop Spine & Sports Center was to ask them for permission to send them a fax; is that right? A. Yeah."). The Court thus

16

concludes that the issue of prior express consent would not predominate over the common legal and factual questions.

Loop Spine also meets the standard for superiority. Because class-wide issues predominate and the individual claims are relatively small in value, resolving this matter on a class basis would "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment).

The Court further finds no issues with class certification under the Rule 23(b)(3) factors: neither party has articulated a significant interest in individual control of the prosecution or defense of separate actions; the Court is unaware of any existing litigation involving these parties; the Northern District of Illinois is an adequate forum for a class of Chicago-area fax recipients; and similar class actions are regularly handled by federal courts.

Loop Spine has thus established both predominance and superiority.

### C. Ascertainability

Finally, defendants argue that the class should not be certified because Loop Spine's proposed class definition fails to meet the "implicit requirement of ascertainability": that is, whether a class can be "defined clearly and based on objective criteria." *See* [268] at 4 (citing *Mullins v. Direct Digital*, LLC, 795 F.3d 654, 657 (7th Cir. 2015)). Loop Spine's motion for class certification proposed the following class definition: "All persons with fax numbers, who on August 6-10, 2022, were sent faxes by or on behalf of Defendants American College of Medical Quality, Inc., Affinity

17

Strategies, LLC and Daniel J. McLaughlin, promoting the ACMQ Annual Conference in the form of Exhibit A." [247] at 1. But as Affinity points out, whether the faxes were sent "by or on behalf" of particular defendants is a merits issue, and the Seventh Circuit has warned that "classes that are defined in terms of success on the merits—so-called 'fail-safe classes'—[] are not properly defined." *Mullins*, 795 F.3d at 660.

Loop Spine proposes a new definition in its reply: "All persons with fax numbers, who on August 6–10, 2022, were sent faxes in the form of Exhibit A." [278] at 1. The new definition is clear, objective, and does not involve any merits question. The Court therefore adopts it.

### IV. Conclusion

The motion to certify the class [247] is granted, and the class is certified as follows: All persons with fax numbers, who on August 6–10, 2022, were sent faxes in the form of Exhibit A. The Court also appoints Loop Spine as class representative and Edelman, Combs, Latturner & Goodwin, LLC as class counsel.

The parties are directed to appear for a status hearing on 6/3/25 at 9:30 a.m. to discuss next steps in this litigation, including the possibility of settlement.

_____
Georgia N. Alexakis
United States District Judge

Date: 5/20/25